UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ZHIHAN WANG, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-04760 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| PDD HOLDINGS, INC., | ) | |
| WHALECO, INC., and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zhihan Wang brings two sets of claims: (1) direct copyright infringement under 17 U.S.C. § 101 against all defendants; and (2) contributory and vicarious copyright infringement under 17 U.S.C. §§ 106 & 501 against defendant PDD Holdings, Inc. ("PDD"). Before the Court is PDD's motion to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the Court grants PDD's motion to dismiss [24] and denies Plaintiff's request for targeted jurisdictional discovery.

**BACKGROUND**

Plaintiff is a contemporary artist who is the author of the original work entitled "sweet monsters" (the "Work"), which is copyrighted and depicts a young girl being attacked by sentient snacks such as donuts and ice cream cones. Plaintiff alleges that an online retailer called Temu sells apparel that infringes on the Work, and that Temu's conduct constitutes willful copyright infringement.

Plaintiff asserts that various companies operate Temu, including PDD and its subsidiary Whaleco, Inc. ("Whaleco"), another defendant in this case. PDD is a Cayman Islands corporation with its principal place of business in Dublin, Ireland. Whaleco is a Delaware corporation with its principal place of business in Boston, Massachusetts. To show PDD's relationship with Whaleco

1

and Temu, Plaintiff presents PDD's SEC filings, statements from PDD and Temu's websites, and various news clippings.

The remaining facts are taken from the PDD's representative's affidavit and are uncontroverted unless otherwise noted. PDD has no offices or property in Illinois. PDD does not sell any products. PPD is a holding company, and one of its subsidiaries is Whaleco. Despite Plaintiff's filings, PDD's representative affirms that PDD does not operate the Temu platform, nor does it operate any social media accounts or websites in relation to the operation of the Temu platform.

**LEGAL STANDARD**

A Rule 12(b)(2) motion to dismiss tests whether the federal court has personal jurisdiction over a defendant to adjudicate claims against it. Fed. R. Civ. P. 12(b)(2). The Copyright Act, at issue here, does not authorize nationwide service, so this Court "may exercise personal jurisdiction over [] defendant if it would be permitted to do so under the Illinois long-arm statute." *Brandon Wade Licensing, LLC v. Terezowens.com, LLC*, No. 12 C 9113, 2013 WL 1446356, at *2 (N.D. Ill. Apr. 9, 2013) (St. Eve, J.) (citations omitted). "The Illinois long-arm statute requires nothing more than the standard for federal due process." *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018). Due process requires that defendants have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (internal citation omitted).

These jurisdictional limits "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (citation omitted). Although the plaintiff bears "the burden of establishing personal jurisdiction," "[w]hen the district court bases its determination solely on written materials

2

and not an evidentiary hearing, plaintiffs must only make a *prima facie* showing of personal jurisdiction over the defendants to survive their motion to dismiss." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). In considering a Rule 12(b)(2) motion, courts accept well-pleaded facts as true, *id.,* but may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi–Sythlabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

**DISCUSSION**

Plaintiff argues that this Court has jurisdiction over PDD based on specific personal jurisdiction in Illinois and personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Alternatively, Plaintiff requests jurisdictional discovery to establish personal jurisdiction over PDD. The Court addresses each argument in turn.

### I. Specific Personal Jurisdiction

Personal jurisdiction can be general or specific. *Tamburo v. Dworkin*, 601 F.3d 693, 701-02 (7th Cir. 2010) (quoting *Int'l Shoe Co.*, 326 U.S. at 316 (1945)). Because Plaintiff does not attempt to establish general jurisdiction, the Court focuses on whether specific jurisdiction exists. To determine specific jurisdiction, courts ask whether: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) [the] exercise of personal jurisdiction … comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021) (citation omitted).

Plaintiff argues that PDD purposely availed itself of conducting business in Illinois by controlling its subsidiary, Whaleco, which conducts substantial business in Illinois through Temu. Defendant replies that PDD is merely a holding company of its subsidiary Whaleco and does not itself conduct any business in Illinois.

Generally, "jurisdiction over a subsidiary is not sufficient to confer jurisdiction over an out-of-state parent." *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 865 (N.D. Ill. 1998) (Gottschall, J.). However, an exception to this rule arises when the parent sufficiently controls the subsidiary. *Hub Grp., Inc. v. Go Hub Grp. Holdings, Corp.*, 2021 WL 4264349, at *6 (N.D. Ill. 2021) (Tharp, J.); *see also Lasalle Nat'l Bank v. Vitro*, 85 F. Supp. 2d 857, 863 (N.D. Ill. 2000) (Norberg, J.) (jurisdiction over a parent may be appropriate where the court can "impute the acts of the subsidiary to the parent" and where the subsidiary has sufficient minimum contacts with the forum state).

Courts use two approaches to determining sufficient control to trigger the exception. *Lasalle*, 85 F. Supp. 2d at 866. First, courts can apply the traditional test for piercing the corporate veil. *Id.* Plaintiff fails to raise this argument, though, and waives it. *See Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 876 (7th Cir. 2008) (undeveloped argument constitutes waiver). Second, courts can evaluate the following factors:

> (1) whether officers or directors are the same; (2) how much control is exerted by parent over daily affairs of its subsidiary; (3) whether parent arranges financing for and capitalization of subsidiary; (4) whether separate books, tax returns, and financial statements are kept; (5) whether parent holds its subsidiary out as agent; and (6) the method of payment made to parent by subsidiary.

*Marks v. Worldwide Robotic Automated Parking, LLC*, No. 16-CV-8656, 2017 WL 2985757, at *5 (N.D. Ill. July 13, 2017) (Dow, J.) (citation omitted).

This "imprecise" test assumes that there will be some control in the typical parent-subsidiary relationship "since '[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent.'" *Erie Foods Intern. v. Apollo Grp. & Apollo USA, Inc.*, 2006 WL 932344, at *3 (N.D. Ill. 2006) (Coar, J.) (citing *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998)). Thus, a parent company "may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the

4

two entities for purposes of personal jurisdiction." *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 945 (7th Cir. 2000).

Plaintiff argues that PDD's "public statements" establish that PDD controls Whaleco and Temu. Plaintiff presents PDD's SEC filings, statements from PDD and Temu's websites, and various news clippings as evidence that PDD substantially controlled Temu. Defendant contends that evidence establishes only a generic parent-subsidiary relationship. The Court agrees.

Plaintiff cites *Lasalle*, which is instructive on how to weigh the evidence presented. 85 F. Supp. 2d at 865. The Court in *Lasalle* noted that "[p]ersonal jurisdiction is based on actual evidence of control … rather than on a corporation's general descriptions." *Id.* (finding that evidence presented by plaintiff fell into two categories, facts that a parent represented itself as "one larger, super corporation," were unpersuasive, as compared to facts relating to the actual relationship between the parent and its subsidiaries, including how business was conducted).

Plaintiff cites PDD's references to Temu as "our platform" and "our brand" and the usage of "we" in their 2022 SEC report as evidence that PDD controlled Whaleco and Temu. Courts have held that usage of "we" and "our" is consistent with the existence of separate entities within the corporate family and insufficient evidence to conclude that a parent substantially controls a subsidiary. *See, e.g.*, *GC2 Inc. v. Int'l Game Tech. PLC*, 2017 WL 2985741, at *9 (N.D. Ill. 2017) (Kennelly, J.) (finding that a parent's use of "we" and "our" in a 20-F report to the SEC "is too thin a reed to support an inference that the parent exerts an unusually high degree of control over its subsidiaries."); *Gruca,* 19 F. Supp. 2d at 867-68 (finding that a parent corporations usage of "our key overseas operation," "our efforts," "our marketing position" in an annual report is consistent with parent and subsidiaries maintaining separate identities).

PDD's filings incorporating "we" statements are not inconsistent with a typical parent-subsidiary relationship in which the parent "necessarily control[s], direct[s], and supervise[s]" to

5

some extent. *IDS Life Ins. Co.*, 136 F.3d at 540. Without evidence that PDD participates in the active operation of the business, "it may not be reasonable to infer that holding companies as opposed to their subsidiaries are conducting actual business." *Howell v. Bumble, Inc.*, 2023 WL 6126492, at *13 (N.D. Ill. 2023) (Jenkins, J.).

The statements from PDD and Temu's websites likewise fail to establish that PDD substantially controlled its subsidiaries. Personal jurisdiction must be "based on actual evidence of control." *Lasalle,* 85 F. Supp. 2d at 865. Plaintiff presents nothing more than promotional statements from the companies, and such "[p]romotional statements made on a public website do not precisely convey the operative corporate structure." *Id.* Plaintiff also cites two news articles that state "Temu is able to utilize the sourcing, logistics, and processing capabilities of PDD holdings" and "[b]y leveraging the sourcing, fulfillment, and shipping capabilities of PDD holdings, Temu is bringing the savings to its customers." These statements fail to show that PDD controls the active operations of Temu and do not contradict the typical parent-subsidiary relationship, as a parent "may provide administrative services for its subsidiary" without diminishing "the separateness of the two entities for purposes of personal jurisdiction." *Central States*, 230 F.3d at 945.[1]

Plaintiff has failed to establish that PDD exerted substantial control over its subsidiary, so it is improper to impute the acts of WhaleCo and Temu to PDD. Plaintiff thus fails to demonstrate that PDD has purposely availed itself of the forum, as required for specific personal jurisdiction.

## II. Jurisdiction Under Rule 4(k)(2)

Alternatively, Plaintiff argues that jurisdiction exists under Rule 4(k)(2). "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts

---

[1] Plaintiff also briefly argues that PDD controls an e-commerce platform in China called "Pinduoduo," which is a "sister company" of Temu. Regardless of the merits of this argument, it is irrelevant to this action and irrelevant to the inquiry of whether PDD substantially controls WhaleCo and Temu.

of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). For Rule 4(k)(2) to apply, four conditions must be met: "(1) the plaintiff's claims must be based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction must be consistent with the laws of the United States; and (4) the exercise of jurisdiction must be consistent with the Constitution." *Central States*, 230 F.3d at 940. Defendants seeking to preclude the application of Rule 4(k)(2) need only name another state where jurisdiction would be proper. *ISI Intern., Inc.* v. *Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).

Plaintiff's claims are based on federal copyright law, so the first requirement is easily met. As to the second, PDD has not stated where jurisdiction would be proper. Therefore, this Court may apply Rule 4(k)(2) if the exercise of jurisdiction would be consistent with the laws of the United States and the Constitution, under the due process standard described above. For this inquiry, however, the forum considered is the entire United States.

As above, the Court will analyze minimum contacts with the United States using the same familiar test for specific jurisdiction. *See Synthes (U.S.A) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1296-97 (Fed. Cir. 2009). Plaintiff argues PDD has purposefully availed itself of the laws of the United States in three ways: by operating the website Temu, registering trademarks with the USPTO, and offering its stock to citizens on the NASDAQ. The Court has already addressed PDD's "control" of Whaleco and Temu, for the purpose of jurisdiction, in Section I. That analysis applies equally here, as none of Plaintiff's arguments were Illinois-specific. Plaintiff fails to establish that PDD purposefully availed itself to the laws of the United States by operating Temu.

Plaintiff's remaining arguments also fail to establish specific personal jurisdiction. Although neither party cites binding case law, some courts have held that stock exchange listings, without more, are insufficient to confer jurisdiction. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97

7

(2d Cir. 2000); *Gorman v. Goldcorp, Inc.*, 2007 WL 4208982, at *3 (S.D. Ill. Nov. 26, 2007) ("The mere listing of Goldcorp's stock on the New York Stock Exchange is an insufficient basis to sustain personal jurisdiction here."). And although there is some "disagreement among courts regarding whether the mere registration of a trademark … by itself, constitutes an adequate contact," *Shenzhen Wanfan Tech. Co. v. Orbital Structures Pty Ltd.*, 2024 WL 325339, at *6. (N.D. Ill. 2024) (Wood, J.), "the weight of authority rejects basing federal long-arm jurisdiction on the mere registration of a U.S. trademark." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 136 (S.D.N.Y. 2020).

In any case, even if the Court agreed with Plaintiff that offering stock on NASDAQ and registering for trademarks constitute purposeful availment, Plaintiff's argument inevitably fails at step two. The alleged injury must "arise out of or relate to the defendant's forum related activities." *Rogers*, 996 F.3d at 819. "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum." *Walden*, 571 U.S. at 284 (emphasis added). Unrelated contacts or contacts that fail to "provide the factual basis for the plaintiff's claim are not relevant to a specific jurisdiction inquiry." *Caddo Sys. v. Siemens Aktiengesellschaf*, 2022 WL 704779, *6 (N.D. Ill. Mar. 9, 2022) (Durkin, J.).

In this case, PDD's trademark applications are unrelated to Plaintiff's copyright claims. Plaintiff does not attempt to argue otherwise, but instead offers that it would not offend traditional notions of fair play and justice to require one who has received a property interest from the United States to litigate in the United States. The Court disagrees. Because the filing of the trademark is not the basis of the alleged injury, this is not a jurisdictionally significant contact. *See WorkForce Software, LLC* v. *Workforce.com, Inc.*, 2021 WL 4963608, at *6 (N.D. Ill. 2021) (Leinenweber, J.).

Plaintiff's brief NASDAQ argument paints with too broad of a brush. The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 474, 475, 105

8

S.Ct. 2183 (1985) (quotation marks omitted).  Here, PDD's listing on the NASDAQ does not form the basis of Plaintiff's action for copyright infringement of the Work and is too attenuated of a contact to support haling a foreign defendant into this Court.  Plaintiff fails to cite any authority to the contrary.  Therefore, Plaintiff fails to establish person jurisdiction under Rule 4(k)(2).

### III.    Jurisdictional Discovery

Plaintiff alternatively requests permission to conduct jurisdictional discovery on the issue of personal jurisdiction.  Before jurisdictional discovery should be permitted, a plaintiff must, at minimum, "establish a colorable or prima facie showing of personal jurisdiction" over the defendant.  *Central States*, 230 F.3d at 946.  Where the factual record is ambiguous, jurisdictional discovery is appropriate. *Workforce,* 2021 WL 4963608, at *6.  On the other hand, when the "lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted."  *Medline Indus., Inc. v. Diversey, Inc.*, 2020 WL 5763637, at *4 (N.D. Ill. 2020) (Guzmán, J.). "The standard is low, but a plaintiff's request will be denied if it is based only upon unsupported assertions of personal jurisdiction."  *Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) (Kendall, J.) (citing *Central States*, 230 F.3d at 946).  And importantly here, "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Central States,* 230 F.3d at 946.

Plaintiff argues that there is an ambiguity over who operates and controls Temu.  Plaintiff requests discovery on the following topics: PDD's contacts with Illinois and the United States, PDD's control over WhaleCo, PDD's involvement with Temu, and PDD's role in the sale of the Infringing Products and its Resulting Profits.

Plaintiff's discovery requests are redundant.  PDD has already declared that it "has no offices or property in Illinois," "does not sell any products, and thus does not sell any products in Illinois," and "does not specifically target any website or business toward Illinois."  Plaintiff has

9

provided no reason to doubt PDD's declaration, nor any reason to conclude that it is incomplete. Second, PDD declared that it serves as a holding company of its subsidiaries and Plaintiff has not presented any substantial evidence to rebut this assertion. Third, PDD declared it does not operate Temu, and finally, "does not sell any products." Again, despite apparently combing through many kinds of public filings, Plaintiff presents no reason to doubt this.

Finally, it is not a mystery who operates Temu. PDD has conceded that WhaleCo operates the Temu platform. There is no need here to go on a "fishing expedition" to determine who is responsible. *Cf. Howell*, 2023 WL 6126492, at *14-15 (granting jurisdictional discovery where defendants claimed plaintiff had sued the wrong entities in a corporate family, noting that "it stands to reason that Bumble [the parent company] must know the correct ones, given its position at the top of the 'single operating segment'"). PDD is not hiding its corporate structure, Whaleco is the admitted operator of Temu and a named defendant in this case. The Court denies Plaintiff's request for jurisdictional discovery.

**CONCLUSION**

For these reasons, the Court grants PDD's motion to dismiss [24] for lack of personal jurisdiction under 12(b)(2) and denies Plaintiff's request for jurisdictional discovery.

**IT IS SO ORDERED.**

Date: 6/26/2024

Entered:

_____
SHARON JOHNSON COLEMAN
United States District Judge